Jones, J.
By the adoption in November, 1923, of the amendment to Section 35, Article II, of our Constitution, pertaining to workmen’s compensation, provisions were made giving to the Industrial Commission full power to determine whether the death of an employe resulted from the failure of the employer to comply with a specific requirement enacted by the General Assembly or promulgated in the form of an order adopted by the commission or board; and, when the commission has found that death resulted because of such failure to comply, the constitutional provision *70 authorizes the eommissiou to add to the compensation an amount “not greater than fifty nor less than fifteen per centum of the maximum award established by law.” Then follows the clause which gives rise to this controversy, to wit, “if such compensation is paid from state fund, the premium of such employer shall be increased in such amount, covering such period of time as may be fixed, as will recoup the state fund in the amount of such additional award.”
In support of his demurrer to the petition, the Attorney General advances this argument in his brief: “The Industrial Commission claims that it is not required to pay these additional awards when they cannot be collected from the employer.” He contends that since the employer is insolvent no increase in his premium payments is possible, and the state will be unable to recoup its insurance fund from such insolvent employer. But the payment of the additional award, under the constitutional article quoted, is -not made conditional upon the ability of the state thereafter to recoup its insurance fund. The 15 per cent, minimum and 50 per cent, maximum is not termed a penalty under the constitutional section alluded to. It is denominated an “award” of compensation; it is as much an award as the original compensation fixed; it is simply an increased award added by the commission to the original award; and this is to be “paid in like manner as other awards.” The constitutional validity of one phase of the controversy, including the validity of a clause contained in Section 1465-75, General Code (111 Ohio Laws, p. 218), under the due process clause of the federal Constitution, has *71 been discussed in a case this day reported by us, State ex rel. Williams v. Industrial Commission, ante, 45, 156 N. E., 101. However, in tbe instant case, the relator occupies a more favorable position than did the relator in the Williams case, supra, for the reason that Eudd’s employer was a contributor to the state insurance fund.
In a case decided at the last term of this court (Slatmeyer v. Industrial Comm., 115 Ohio St., 654, 155 N. E., 484), the Attorney General in his brief conceded the point which he now antagonizes. He then said:
“When an attempt is made to recoup the amount, it may be that the employer is insolvent. * * * Nevertheless, the employe or his dependents have become entitled to and have received the compensation, regardless of the ability to recoup the fund. ’ ’
There appears to be no valid reason why, if the state insurance fund may be recouped in cases where the original compensation is awarded, it may not also be recouped where the compensation is increased by an added award.
The contention that the employes of careless employers, who become subsequently insolvent, should not receive the “additional award” from premiums paid in by careful and cautious employers, is logically untenable. Its infirmity lies in contrasting the respective rights of solvent and insolvent employers and ignoring the rights of the dependents of killed workmen. Section 35, Article II, of our Constitution, discloses its purpose in the opening sentence. It was adopted “for the purpose of providing compensation to workmen and their dependents.” We concede that employers are *72 given immunity from the ordinary negligence suit; but it must not be forgotten that under our Workmen’s Compensation Law system the employe and his dependents have also been deprived of important statutory and common-law remedies. This system is not based upon the solvency or insolvency of the contributing employer; nor is it based on the contingency of care or neglect on the part of the employer. The employe is entitled to recover irrespective of negligence; he may recover a greater compensation if his employer fails to comply with specific lawful requirements. The careful employer to-day may be careless to-morrow; and the solvent to-day become insolvent tomorrow. If the employe of a contributing employer, or his dependents, cannot obtain an added award because of the insolvency of the employer, by parity of reasoning they should not obtain any compensation, even original, if his employer becomes insolvent. In either case, the burden is levied upon the industries of the state. If solvency is made the basis of contribution and payment, no distinction can be made between the original and added award. An employer who has contributed to the fund may never have an accident in his establishment; yet the fund to which he has contributed is allocated by the state for the payment to dependents of employes injured in establishments where accidents have occurred, or may occur in the future. Many employers, who have contributed to the huge fund now held in trust by the state, may have retired from active operations; new ones may have entered the field of industry; workmen injured in 1926 are compensated from a fund enlarged by contribu *73 tions made by employers in 1927; the workmen injured in 1927 are compensated from an insurance fund created by contributions made many years prior to their injuries. In such a situation it is impossible to measure the shifting claims of contributors to the insurance fund without imperiling our whole system of workmen’s compensation. In the meantime, the employers have obtained their insurance and their immunity from suits for damages.
The burdens of the act are placed, not upon the employer, but upon the industry and its hazards; and they are so placed under the exercise of the state’s police powers. Emphasizing again, as we did in the Williams case, supra, the distinction between cases where the due process clause is sometimes involved and eases where due process interferes with the police powers of a state, we quote from a case quoted by Mr. Justice Pitney, in Mountain Timber Co. v. Washington, 243 U. S., 219, 238, 37 S. Ct., 260, 265 (61 L. Ed., 685, Ann. Cas., 1917D, 642):
“Neither the [Fourteenth] Amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police • power, to prescribe regulations to promote the health, peace, morals,” etc.
And from the same opinion, at page 243 (37 S. Ct., 267) we further quote: “And if, as we have held in New York Central R. R. Co. v. White [243 U. S., 188, 37 S. Ct., 247, 61 L. Ed., 667, L. R. A., 1917D, 1, Ann. Cas., 1917D, 629], the state is at liberty, notwithstanding the Fourteenth Amend- *74 meat, to disregard questions of fault in arranging a system of compensation for such injuries, we are unable to discern any ground in natural justice or fundamental right that prevents the state from imposing the entire burden upon the industries that occasion the losses.”
And then he says that the Workmen’s Compensation Act places “hazardous occupations in the category of dangerous agencies,” requiring their losses to “be reckoned as a part of the cost of the industry, just like the pay roll, the repair account,” etc.
The constitutional validity of the Workmen’s Compensation Act was fully sustained by this court in State ex rel. Yaple v. Creamer, Treas., 85 Ohio St., 349, 389, 97 N. E., 602, 39 L. R. A. (N. S.), 694, and in Fassig v. State ex rel. Turner, Attorney General, 95 Ohio St., 232, 116 N. E., 104. In both of these cases the validity of its provisions was upheld for the reason that they were passed pursuant to the exercise by the state of its police powers. On page 247 (116 N. E., 108) of the Fassig case, Judge Johnson, in his opinion, said:
“It must be remembered that this act was passed in the exercise of the police power, fortified by the grant of power contained “in the amendment to the Constitution in question, which in itself is but an assertion of the police power.”
It is fundamental that private rights and private property must yield to the proper exercise by the state of its police powers. Those who contend for the claimed rights of due process ignore the important fact that our workmen’s compensation system, created under our state Constitution *75 and laws, rests upon the state’s exercise of those powers.
There is nothing in this case disclosing an unreasonable classification or any such arbitrary imposition of burdens as would invoke the protection of the Fourteenth Amendment of the federal Constitution. In the case of Jeffrey Mfg. Co. v. Blagg, 235 U. S., 571, 35 S. Ct., 167, 59 L. Ed., 364, in considering the Fourteenth Amendment in respect to our Ohio Workmen’s Compensation Law, and its claimed inequality in respect to classification, Mr. Justice Day said, at page 577 (35 S. Ct., 169):
“That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the Legislature must be allowed a wide field of choice in determining the subject-matter of its laws, what shall come within them, and what shall be excluded. ’ ’
Furthermore, the state insurance fund does not belong to the employers, but to the injured workmen and their dependents; and under Section 35, Article II, of the Constitution, the fund is to be “administered by the state, determining the terms and conditions upon which payment shall be made therefrom.”
Further discussion of the principles here involved may be found in our opinion in State ex rel. Williams v. Industrial Commission, supra.
Since the petition has been challenged by demurrer, the facts pleaded therein are confessed to be true; and, since it appears that the employer was a contributor to the state insurance fund, and that an added award of 50 per cent, was made by the *76 commission because of failure to comply with a lawful specific requirement, and since the commission has refused payment of the added award and makes such payment contingent solely upon its collection from the insolvent employer, we are of opinion that the demurrer to the petition should be overruled, and that upon failure of the defendant to further plead a peremptory writ should issue as prayed for.

Writ allowed.

Day, Allen and Matthias, JJ., concur.