Day, J.
 

 In the brief for plaintiff in error we are advised there is “but one issue, and this issue is not complicated either by an election of any kind on the part of Kuhn to submit to the Workmen’s Compensation Board or by contributory negligence or assumed risk”; that plaintiff in error “stands clearly upon Sections 871-15 and 871-16, Supplement of the Code, and Section 1027, paragraph 4, of the General Code.”
 

 It is the claim of defendant in error that—
 

 “The trial court held that this case was governed by the provision of subdivision 4, Section 1027 * * * and not only that that provision was a ‘lawful requirement’ within the meaning of that term as used in Section 1465-76, but that it made the traction company an insurer against any injury to Kuhn directly resulting from any unsound condition of any part of the elevator; that no matter how carefully or frequently the elevator had been inspected or repaired or what measures had been taken to maintain it in a safe and sound condition, the company was liable to Kuhn for any injury directly resulting to him from any unsoundness in any part of the elevator, even though the unsoundness were latent and not discoverable by the exercise of the greatest care.”
 

 ' It is therefore apparent that the paramount question in this case is: Does subsection 4 of Section 1027, General Code, create an absolute liability on the part of an employer for an injury to an employee due to the fall of an elevator, regardless of whether the employer has made “suitable provisions to prevent injuries to persons who use”
 
 *273
 
 such elevator, regardless of whether such employer has had said elevator “examined frequently” in order to keep “in sound condition the ropes, gearing and other parts of said elevator,” regardless of what steps the employer may have taken to make the employment and place of employment as free from danger to the life, health, safety, or welfare of employees as the nature of the employment would reasonably permit, and regardless of whether the employer has furnished safety devices and safeguards and adopted and used methods reasonably adequate to render such employment and place of employment safe, under the meaning of the statute?
 

 The sections of the General Code relied upon are in substance as follows:
 

 “Sec. 1027. The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows: * * *
 

 “4. They shall case in a.11 unused openings of elevators and elevator shafts and place automatic gates or floor doors on each floor where entrance to the elevator carriage is obtained. They shall keep such gates or doors in good repair and examine frequently and keep in sound condition the ropes, gearing and other parts of elevators.”
 

 “See. 871-13. The terms ‘safe,’ and ‘safety,’ as applied to any employment or a place of employment, shall mean such freedom from danger to the life, health, safety or welfare of employes * * * as the nature of the employment will reasonably permit.”
 

 “Sec. 871-15. And shall furnish and use safety
 
 *274
 
 devices and safeguards, * * * and shall do every other thing
 
 reasonably necessary
 
 to protect the life, health, safety and welfare of such employes. * * *”
 

 “Sec. 871-16. No such employer shall fail to furnish, provide and use safety devices and safeguards,
 
 * * *
 
 and no employer shall fail or neglect to do every other thing
 
 reasonably necessary
 
 to protect the life, health, safety and welfare of such employes. * * *”
 

 To state the contention of the plaintiff in error in another form, it may be said that it is claimed that when an elevator falls with the operator, and he is injured as a proximate result of such fall, there is a liability, because it was the duty of the employer, as charged by the trial court, “to provide and maintain an elevator sufficient in all its parts so that when used for the purpose intended and in the manner intended it would not break,” from which it is to be inferred that if it broke there was a violation of the expressions “safe,” “safety devices,” “safeguards,” and “in sound condition,” as used in Sections 871-13, 871-15, 871-16 and Section 1027, subsection 4, General Code. The effect of such a contention is to constitute the employer an absolute insurer of the safety of such employee, unless the employer is given an opportunity to show that he has met the statutory requirements.
 

 Our attention is called by counsel upon both sides to the case of
 
 Ohio Automatic Sprinkler Co.
 
 v.
 
 Fender,
 
 108 Ohio St., 149, 141 N. E., 269. Inasmuch as counsel upon both sides rely upon that case, it is well to understand what that case holds touching a “lawful requirement,” and the follow
 
 *275
 
 ing excerpt from the opinion, at page 170 of 108 Ohio St., 141 N. E., 276, makes that point olear: “These provisions do not constitute an absolute liability nor make the employer an insurer against injuries to employees. The general requirement of ‘suitable provisions to prevent injury’ and the specific requirement that ‘they shall guard” must be construed in the light of the definitions of ‘safe’ and ‘safety’ in Section 871-13, G-eneral Code, and should be so administered as only to require ‘such freedom from danger to the life, health, safety or welfare of employees or frequenters as the nature of the employment will reasonably permit.’ ”
 

 While it was the duty of the employer “to examine frequently and keep in sound condition the .ropes, gearing and other parts of elevators,” that duty would be discharged if there was frequent examination by the employer, and the ropes, gearing, and other parts of the elevator were kept as free from danger to the life, safety, and welfare of the employee using the elevator as the nature of the employment would reasonably permit, and if the employer furnished, provided, and used safety devices and safeguards, and adopted and used methods reasonably adequate to render the use of said elevator safe, within the meaning of the statute. The word
 
 “sound,”
 
 as used in Section 1027, subsection 4, has the same significance as the word
 
 “safe,”
 
 as defined in Section 871-13, to-wit, as free from “danger to the life, health, safety or welfare of employees * * * as the nature of the employment will reasonably permit.” By recognized lexicographers the word “safe” is given the meaning of Sound, and the word “sound” the meaning of safe.
 

 
 *276
 
 It is claimed that this is simply a statement of the common-law rule of ordinary care. Much discussion has already taken place in this court on this subject, and, without adding thereto, it is sufficient to say that the rule of statutory care above stated is what the Legislature has seen fit to embody in the law.
 

 If the statute is to be changed, the place to change it is in the Legislature. As indicating that the Legislature intendéd something different from ordinary care, reference may be made to Section 6243, General Code, commonly called the Norris Act, wherein it is. affirmatively provided that—
 

 “The employer may show by way of defense that such defect was not discoverable in the exercise of ordinary care.”
 

 It is, of course, difficult to say as a matter of law when the physical conditions and acts requisite' to satisfy the statute appear conclusively by the evidence; the question of the employer’s compliance with the statutory duty must usually, but not always, be left to a jury. If there is no evidence tending to show a violation of a statutory duty, when that is relied upon as a basis of recovery, then of course it is the duty of the court to take the case from the jury. On the other hand, if there is evidence tending to show violation of duty prescribed by statute, the question should be submitted to a jury under proper instructions.
 

 It was this denial upon the part of the trial court to permit the defendant traction company to show, or to attempt to show, that it had complied with this statutory duty, that amounted to prejudicial error against the traction company.
 

 
 *277
 
 This court in
 
 Variety Iron & Steel Works Co.
 
 v.
 
 Poak,
 
 89 Ohio St., 297, 106 N. E., 24, held that a violation of Section 1027 was negligence
 
 per se,
 
 and the trial court in the present instance correctly so interpreted the law. This doctrine of a violation of a statute constituting negligence
 
 per se
 
 has been heretofore recognized by this court.
 
 Schell
 
 v.
 
 Du Bois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710;
 
 Neave Bldg. Co.
 
 v.
 
 Roudebush, Admr.,
 
 96 Ohio St., 40, 117 N. E., 22;
 
 Krause
 
 v.
 
 Morgan,
 
 53 Ohio St., 26, 43, 40 N. E., 886. But whether or not a violation of subdivision 4 of Section 1027 was negligence
 
 per se
 
 was not the true question in this case. The paramount question may be stated thus: Was there a violation by the traction company of a
 
 statutory duty,
 
 which was the proximate cause of plaintiff’s injury? The plaintiff claimed there was, and the defendant claimed there was not, and this record shows that the traction company was denied the right of showing its compliance with the: lawful requirement.
 

 Section 1027, subsection 4, General Code, enjoined a duty, but not an absolute liability, and a failure to observe the duty would be a violation of a “lawful requirement.”
 

 This statute was enacted for the purpose of forestalling injuries and accidents, and not for the purpose of creating absolute liabilities. It was intended to be complied with by the employer for the manifest purpose of prevention of industrial casualties. If an employer is not permitted to show that he has complied with the provisions of the statute, it would seem that the purpose of its enactment had not been met, but that a plan of
 
 *278
 
 absolute liability had been created. This we do not think was the legislative intent.
 

 This court has heretofore construed safety statutes of like character and reached the conclusion that the same do not create absolute liability.
 

 In
 
 Krause
 
 v.
 
 Morgan,
 
 53 Ohio St., 26, 43, 40 N. E., 886, 890, construing the statute passed to prevent explosions due to gas in coal mines, Judge Spear spoke as follows:
 

 “While the statute, as we construe it, does not make the operator of the mine
 
 absolutely
 
 liable to a party injured by an explosion of gas where the operator has not complied with the statute, such conduct is negligence
 
 per se,
 
 and the employer cannot escape liability by showing that he took other means to protect the workmen equally efficacious. Proof of failure to obey the statute is all that is necessary to establish negligence on the part of the operator, but the statute does not change the well-established rule that where one has been guilty of negligence which may result in injury to others, still the others are bound to exercise ordinary care to avoid injury.”
 

 Now, the defendant, the traction company, had a right to show, if it could, that it had met its statutory duty — by proving that it had performed the duties required by statute.
 

 The charge of the court, in substance, made the defendant liable if the elevator, or any part thereof, was unsound and the plaintiff’s injury proximately resulted from such unsoundness when the elevator was being used in the manner and for the purpose intended. This view ignored the provisions of Section 1027, which required the defendant to
 
 “examiine frequently
 
 and keep in sound
 
 *279
 
 condition the ropes, gearing and other parts of elevators,” and to “make suitable provisions to prevent injuries”; and further ignored the traction company’s right to show its compliance with the statutory duty required by Sections 871-13, 871-15, and 871-16, General Code, with which Section 1027 is
 
 in pari materia.
 
 The mere fact that an accident happens does not, in and of itself alone, constitute a cause of action entitling a plaintiff to recover for violation of a lawful requirement. It must also appear that some of these provisions of statute, looking toward the prevention of injury, have not been complied with by the employer, and this constitutes a failure to comply with a “lawful requirement.” It would be a denial of justice not to permit an employer to show, if he can, that he has complied with the provisions of the statute constituting “lawful requirement.”
 

 We think the traction company, as shown by this record, was denied this privilege, and' that therefore the reversal of the judgment of the court of common pleas was right.
 

 We are not, however, in accord with the view of the Court of Appeals that there was no evidence tending to show violation of a “lawful requirement,” and that final judgment should be rendered for the traction company, although by the decisions of this court, as then existing, such conclusion was correct. We hold that if the company violated subsection
 
 4
 
 of 'Section 1027, General Code, it did violate a lawful requirement, and that if there was evidence tending to show that fact the question was one for the jury. • Therefore, to that extent, the judgment of the Court of Appeals cannot be affirmed.
 

 
 *280
 
 With the modification that the action of the Court of Appeals in rendering final judgment be reversed, and the cause remanded
 
 to the
 
 court of common pleas for a new trial, the judgment of the Court of Appeals is in all other respects affirmed.
 

 Judgment modified, and affirmed as modified.
 

 Marshall, C. J., Wanamaker and Allen, JJ., concur.